UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BESSIE MATTHEWS,

     Plaintiff,

v.                        Case No.:  8:21-cv-2825-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## **OPINION AND ORDER**

Plaintiff Bessie Matthews seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits and for supplemental security income benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their respective positions. Plaintiff also filed a Reply Memorandum. As explained below, the decision of the Commissioner is **AFFIRMED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.     Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A.     Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B.     Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C.    Procedural History

Plaintiff filed an application for a period of disability and disability insurance and for supplemental security income on October 7, 2014, alleging disability beginning on July 13, 2014. (Tr. 101, 102, 226-235). The applications were denied initially and on reconsideration. (Tr. 101, 102, 133, 134). Plaintiff requested a hearing, and on February 23, 2017, a hearing was held before Administrative Law Judge Amber Downs ("ALJ"). (Tr. 31-76). On July 19, 2017, the ALJ entered a decision finding Plaintiff not under a disability from July 13, 2014, through the date of the decision. (Tr. 15-24).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on February 26, 2018. (Tr. 1-5). On April 27, 2018, Plaintiff filed a Complaint in the United States District Court, Middle District of Florida, Tampa Division, seeking review of the final decision of the Commissioner. (Tr. 983-87). On October 25, 2018, the Honorable Christopher P. Tuite, United States Magistrate Judge reversed and remanded the case for further proceedings. (Tr. 994-95).

On remand from the District Court, the Appeals Council vacated the prior final decision and remanded the matter to the ALJ to further evaluate Plaintiff's severe impairments and objective evidence, reconsider Plaintiff's maximum residual functional capacity, reevaluate the medical opinions, and if warranted obtain supplemental evidence from a vocational expert to clarify the effect of the assessed

limitations on Plaintiff's occupational base. (Tr. 1005-1007). The ALJ conducted another hearing on October 10, 2019. (Tr. 951-982). On November 6, 2019, the ALJ entered a decision finding Plaintiff not under a disability from July 13, 2014, through the date of the decision. (Tr. 930-943). Plaintiff requested review of the decision, but on October 14, 2021, the Appeals Council found no reason under its rules to assume jurisdiction. (Tr. 915-19). Plaintiff initiated the instant action by Complaint (Doc. 7) filed on December 7, 2021, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 16).

### D.    Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through September 30, 2017. (Tr. 933). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 13, 2014, the alleged onset date. (Tr. 933). At step two, the ALJ found that Plaintiff had the following severe impairments: "osteoarthritis; emphysema; cervicalgia; capsulitis of right shoulder/degenerative joint disease; gastroesophageal reflux disease (GERD) and blind in the left eye." (Tr. 933). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. 935).

Before proceeding to step four, the ALJ found that Plaintiff had the following

RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except occasionally lift or carry 20 pounds; frequently lift or carry 10 pounds; sit for a period of 6 hours; stand for a period of 6 hours; walk for a period of 6 hours; push and pull as much as can lift and carry; no overhead left reach; frequent right overhead reach; frequent right and left all other reach; frequently climbing ramps and stairs; occasionally climbing ladders, ropes or scaffolds; frequently stoop, kneel, crouch and crawl; limited to monocular vision of the right eye; no vision of the left eye; frequent exposure to unprotected heights, moving mechanical parts, humidity and wetness; occasional exposure to dust, odors, fumes and pulmonary irritants.

(Tr. 936).

At step four, the ALJ determined that Plaintiff was capable of performing past relevant work as a bottling line attendant in actual and general performance and a housekeeping cleaner in general performance. (Tr. 940). Alternatively at step five, the ALJ relied on the vocational expert's testimony when considering Plaintiff's age (44 years old on the alleged disability onset date), education (marginal), work experience, and RFC, and found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 941-42). Specifically, the vocational expert found that Plaintiff could perform such occupations as:

    (1)   cafeteria attendant, DOT 311.677-010,[1] light, SVP 2

    (2)   counter attendant, DOT 311.477-014, light, SVP 2

    (3)   advertising material distributor, DOT 230.687-010, light, SVP 2

(Tr. 942). The ALJ concluded that Plaintiff had not been under a disability from July 13, 2014, through the date of the decision. (Tr. 942).

## II.    Analysis

On appeal, Plaintiff raises two issues. As stated by Plaintiff, they are:

    (1)   The ALJ's rejection of Dr. Lamm's opinions violates the rules on opinion evidence in effect at the time of her application; and

    (2)   The ALJ's assessment that the evidence did not support Plaintiff's allegations is not supported by substantial evidence.

(Doc. 20, p. 3, 11).

### A.    Consultative Examiner Edwin Lamm, M.D.'s Opinion

Plaintiff takes issue with the ALJ's consideration of Dr. Lamm's opinion. (Doc. 20, p. 7-10). In the decision, the ALJ afforded Dr. Lamm's opinion some weight, and specifically gave great weight to the physical findings and gave no weight to the issue of employability. (Tr. 940). Plaintiff argues that the ALJ did not comply with the rules on opinion evidence in effect at the time of Plaintiff's application. (Doc. 20, p. 7-10). Plaintiff acknowledges that Dr. Lamm "really gave

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

two opinions about [Plaintiff's] abilities. The first concerning her ability to perform her past work, and the second with regard to other work in the economy." (Doc. 20, p. 8-9).

In the decision, the ALJ summarized Dr. Lamm's examination findings:

> On February 24, 2015, Dr. Edwin Lamm examined the claimant in a consultative examination at the request of the Administration. The report noted that the claimant had a normal gait. An examination showed markedly decreased breath sounds that were very distant and very hard to hear. There was no evidence of murmurs. There were no signs of deformities in the extremities. Her cervical spine forward flexion and extension were normal. However, the cervical spine was limited toward the right side to about 60 degrees and on the left side to about 75 degrees.   Her shoulders forward elevation bilaterally were limited to 110 degrees bilaterally. (Exhibits 6F and 7F)

(Tr. 938). Later in the decision, the ALJ afforded some weight to Dr. Lamm's opinion:

> The examiner opined that there was evidence of weakness in both shoulder that was consistent with osteoarthritis with possibility of torn rotator cuff. The claimant would have extreme difficulty in trying to resume work as a housekeeper and with limited range of motion and shoulder use as well with chronic obstructive pulmonary disease. (Exhibits 6F and 7F) The undersigned gave some weight to the findings. The undersigned gave great weight to the physical findings. However, the undersigned gave no weight as to the issues of employability.

(Tr. 940).

Plaintiff contends that the ALJ reasons for not fully crediting Dr. Lamm's opinion are "confusing at best." (Doc. 20, p. 9-10). Plaintiff claims that if the ALJ

gave great weight to Dr. Lamm's physical findings, and these findings were consistent with his own examination and other medical evidence of record, then his opinions about her work abilities should have been credited. (Doc. 20, p. 10-11). Plaintiff argues that even if Dr. Lamm's opinions were on issues reserved to the Commissioner, it is difficult to separate these opinions from his physical findings. (Doc. 20, p. 10). So basically, Plaintiff argues Dr. Lamm is in a better position than the ALJ to know Plaintiff's ability to work. (Doc. 20, p. 10). Unfortunately, the regulations in effect at the time of Plaintiff's application and legal authority do not support Plaintiff's position.

Under the regulations in effect at the time of the application, medical opinions "are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 1527(a)(1). Opinions on issues reserved to the Commission "are not medical opinions." 20 C.F.R. § 404.1527(d). Examples of issues reserved to the Commissioner include,  "[a] statement by a medical source that you are 'disabled' or 'unable to work.'" 20 C.F.R. § 404.1527(d)(1). The Commissioner will "not give any special significance to the source of an opinion on issues reserved to the Commissioner," which would include Dr. Lamm's findings on the issues of employability. 20 C.F.R. § 404.1527(d)(3). Thus, the ALJ properly afforded no

weight to Dr. Lamm's opinions on the issues of employability, namely that Plaintiff would have extreme difficulty in resuming work as a housekeeper and she would be unemployable. *See Romeo v. Comm'r of Soc. Sec.*, 686 F. App'x 731, 733 (11th Cir. 2017) ("As to the final conclusion from Drs. Subervi and Subervi that Romeo would find it difficult to hold a full-time job, that issue is reserved to the Commissioner and was not entitled to any weight." (citing 20 C.F.R. § 404.1527(d)(1)); (Tr. 517). Substantial evidence supports the ALJ determination of the weight afforded to Dr. Lamm's opinion and the ALJ did not err in affording great weight to the physical findings and no weight to the issues of employability.[2]

## B.   Subjective Complaints

Plaintiff argues that even though the ALJ gave five reasons why Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical and other evidence of record, the ALJ gave no specific examples to support these reasons. (Doc. 20, p. 12-14).

A claimant may establish that she is disabled through her own testimony of pain or other subjective symptoms. *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858,

---

[2] In the Reply Memorandum, Plaintiff asserts that the Commissioner's argument that the opinions from state agency consults may be given great weight is not supported by legal authority. (Doc. 22, p. 1-2). The Court did not consider the Commissioner's argument in reaching its decision on the first issue and therefore finds no need to address this argument.

867 (11th Cir. 2019) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)).

In such a case, a claimant must establish:

> "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."

*Id.* (quoting *Dyer*, 395 F.3d at 1210).

When evaluating a claimant's testimony, the ALJ should consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication to alleviate pain or other symptoms; (5) treatment other than medication for relief of pain or other symptoms; (6) any measures a claimant uses to relieve pain or other symptoms; and (7) other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019).

The ALJ should consider these factors along with all the evidence of record. *Ross*, 794 F. App'x 867. If the ALJ discredits this testimony, then the ALJ "'must clearly articulate explicit and adequate reasons for' doing so." *Id.* (quoting *Dyer*, 395 F.3d at 1210). The ALJ may consider the consistency of the claimant's statements along with the rest of the record to reach this determination. *Id.* Such findings "'are

the province of the ALJ,' and we will 'not disturb a clearly articulated credibility finding supported by substantial evidence.'" *Id.* (quoting *Mitchell v. Comm'r of Soc. Sec.,* 771 F.3d 780, 782 (11th Cir. 2014)). A decision will be affirmed as long as the decision is not a "broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1211 (quotation and brackets omitted).

After the summary of medical evidence, the ALJ found:

> The medical evidence of record supports the presence of the physical impairments [and can] reasonably be expected to cause the types of symptoms that the claimant alleges, but not to the full extent to which she alleges them. Therefore, the undersigned find the claimant's subjective complaints to be partially consistent with the evidence of record.

(Tr. 939). The ALJ then presented five reasons why she found Plaintiff's subjective complaints to be partially consistent with the evidence of record: (1) while Plaintiff received treatment for her alleged disabling impairments, the treatment was essentially routine and/or conservative in nature; (2) Plaintiff's physical examinations had been consistently unremarkable; (3) the imaging did not evidence significant loss of functioning; (4) while Plaintiff received various forms of treatment, which would normally weigh somewhat in her favor, the record revealed that the treatment has been generally successful in controlling those symptoms; and (5) Plaintiff had not generally received the type of medical treatment one would

expect for an individual experiencing the pain levels described by Plaintiff. (Tr. 939).

The ALJ concluded with these general findings on Plaintiff's subjective complaints:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 939).

Plaintiff argues that the ALJ did not specifically indicate which evidence supports these five reasons to discount Plaintiff's subjective complaints. (Doc. 20, p. 12, 14). Plaintiff cites *Bailey v. Comm'r of Soc. Sec.*, in support of her arguments. No. 6:16-cv-1429-ORL-41GJK, 2017 WL 3638457, at *3 (M.D. Fla. July 10, 2017), *report and recommendation adopted*, No. 6:16-cv-1429-ORL-41GJK, 2017 WL 3621992 (M.D. Fla. Aug. 23, 2017). . (Doc. 20, p. 13). In *Bailey*, the ALJ provided boilerplate language that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however the claimant's statements as to the intensity, persistence, and limiting effects of these symptoms was not entirely credible for the reasons stated in the decision. *Id.* The court determined that this statement by the ALJ was neither preceded nor followed by an

explanation as to why the claimants statements were not entirely consistent. *Id.* The court further found that the ALJ did not connect how the treatment history rendered the claimant's testimony not entirely credible. *Id.* The court reversed and remanded the action for further consideration. *Id.* at *4. *Bailey* is distinguishable from the instant case because the ALJ here preceded her credibility determination with clearly articulated reasons to discount Plaintiff's subjective statements and the medical evidence that supports her determination.

For instance, the ALJ first stated that even though Plaintiff received treatment for her alleged disabling impairments, the treatment was essentially routine or conservative in nature. (Tr. 939). Relatedly, the ALJ gave a fourth reason that Plaintiff received various treatments, which would normally weigh somewhat in her favor, but the record revealed that the treatments had been generally successful in controlling her symptoms. (Tr. 939). And also related is the final reason that Plaintiff had not generally received the type of medical treatment one would expect for an individual experiencing the pain levels described by Plaintiff. (Tr. 939). In the previous summary of medical evidence regarding Plaintiff's shoulders, the ALJ noted that Plaintiff's shoulder had improved following injection treatment in July 2014, she had increased pain in her shoulder and underwent an injection procedure in June 2015, and her chronic pain was "definitely much better" in April 2017. (Tr. 937-939). As to her breathing, even though her breath sounds were diminished, her

lungs were clear posterior/anterior bilaterally in November 2014, were clear to auscultation in February 2018, and Plaintiff denied shortness of breath or wheezing in October 2018. (Tr. 937-939). This medical evidence supports the ALJ first, fourth, and fifth reasons.

The ALJ provided a second reason that the examinations were consistently unremarkable and a related third reason that the imaging did not evidence significant loss of function. (Tr. 939). Preceding these statements, the ALJ noted that at a June 2014 medical visit, Plaintiff's left shoulder was nontender with palpation, there was no gross weakness on provocative rotator cuff testing, there were signs of impingement, her grip was normal, and there was mild to moderate A.C. joint arthropathy with mild extrinsic impingement. (Tr. 937). In July 2014, an examination showed mild tenderness over the lateral aspect of the arm, full range of motion on the left arms, and a diagnosis of labral tear of the shoulder and synovitis of the shoulder, but her shoulder had improved with an injection treatment. (Tr. 937). In September 2014, the records showed mild to minimal arthritis in the left shoulder. (Tr. 937). A February 2015 consultative examination showed normal gait, no signs of deformities in the extremities, the cervical spine forward flexion and extension were normal, the cervical spine was limited toward the right and left sides, and the shoulders' forward elevation bilaterally were limited. (Tr. 938). In February2017, an examination showed cervical paraspinal hypertonic and tenderness in both

shoulders, but in April 2017, Plaintiff reported that her chronic pain was much better. (Tr. 938). As to breathing issues, Plaintiff's repeatedly was clear to auscultation and continued to smoke during most of the relevant period. (Tr. 937-939). This medical evidence supports the ALJ's second and third reasons to discount Plaintiff's subjective complaints.

Plaintiff also claims that she was unable to afford medical care and had no health insurance, and argues that the ALJ should not have discounted Plaintiff's subjective statements based upon the amount or type of treatment. (Doc. 20, p. 14-15). In evaluating a plaintiff's symptoms and their functional effect, "the ALJ may not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue medical treatment without first considering any explanations that might explain the failure to seek or pursue treatment." *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 487 (11th Cir. 2012). An ALJ must consider evidence showing a plaintiff is unable to afford medical care before denying benefits based on non-compliance with care. *Id.* (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003)). When an ALJ relies on noncompliance with prescribed medical treatment as the "sole ground for the denial of disability benefits," and the record contains evidence that a plaintiff was unable to afford the prescribed medical treatment, then the ALJ must determine whether a plaintiff could afford the prescribed medical treatment. *Ellison*, 355 F.3d at 1275. If a court determines the

failure to follow prescribed medical treatment is not one of the "principal factors in the ALJ's decision," then the ALJ is not required to delve into a plaintiff's ability to pay, and this failure is not reversible error. *Brown v. Comm'r of Soc. Sec.*, 425 F. App'x 813, 817 (11th Cir. 2011). Here, the ALJ did not deny benefits based solely or principally on Plaintiff's type or lack of treatment. The ALJ provided other reasons to find Plaintiff's subjective statements not entirely consistent with the medical and other evidence of record. For these reasons, substantial evidence supports the ALJ's findings as to Plaintiff's subjective statements and the ALJ did not err in this determination.

Moreover, Plaintiff must do more than point to evidence in the record that supports her allegations. *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017). She must show the absence of substantial evidence supporting the ALJ's conclusion. *Id.* Here, substantial evidence supports the ALJ's consideration of Plaintiff's subjective statements. Further, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). Even if the evidence preponderates against the Commissioner's decision, the Court must affirm if substantial evidence supports the Commissioner's decision. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). Thus, remand is not warranted in this case.

## III.    Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on February 17, 2023.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties